UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiffs,                      CRIM. CASE NO. 10-20202

v.                                  PAUL D. BORMAN
                                  UNITED STATES DISTRICT JUDGE

SHERRY WASHINGTON,

        Defendant.

_____/

**ORDER DENYING DEFENDANT SHERRY WASHINGTON'S MOTION TO
SUPPRESS TWO SEARCH WARRANTS: (1) 07X51041B, SUITE 600;
(2) 07-X51041C, SUITE 601 OF 1274 LIBRARY STREET, DETROIT, MICHIGAN**

The instant multi-defendant indictment charges Defendant Sherry Washington in Count

Four with conspiracy to violate 18 U.S.C. § 666 (theft or bribery concerning programs receiving

federal funds) in violation of 18 U.S.C. § 371 (conspiracy), and in Count Five with conspiracy to

launder monetary instruments in violation of 18 U.S.C. § 1956(h).

Defendant Sherry Washington filed a motion to suppress evidence seized pursuant to the

execution of two search warrants: 07X51041B and C.

Defendant challenges the search warrants as follows:

        (a) Both warrants, as issued, were "overbroad" and insufficiently
        "particular", in a constitutional sense; and

        (b) There was no showing of probable cause to search Suite 601.

Defendant Sherry Washington's Motion to Suppress Evidence, P.2. For simplicity, the Court will

refer to the first enumerated warrant as B600 because it applied to Suite 600 at 1274 Library

1

Street in Detroit, and to the second as C601 because it applied to Suite 601 at 1274 Library

Street in Detroit.

**THE B 600 SEARCH WARRANT**

The 600 search warrant described the premises as the office of Associates for Learning,

the target entity of the investigation described in the warrant affidavit.

The records to be seized under the warrant covered the time period of January 2003 to

December 11, 2007, the date the warrant was signed by a judicial officer, and related to alleged

criminal activity involving multiple individuals and multiple entities, and sought records in

various forms including paper, computer storage mediums, hard drives, and compact laser discs.

The named individuals and entities included Associates for Learning; Bond White,

Washington & Washington, Inc.; The BWW Group, Inc.; SJB Consulting Services, Inc.;

Gwendolyn Washington, M.D. PC; Sherry A. Washington & Associates, Inc.; Marilyn White;

Sherry Washington; Gwendolyn Washington; Sally Jo Bond; Stephen Hill; Christine Polk

Osumah; Larry Long; Gary Salmans; Detroit Public Schools; e-Care Solutions, Inc.; Arthur J.

Gallagher and Company; and Long Insurance, Inc..

Records to be seized included:

1.  Personal and business financial documents including but not limited to account opening documents, signature cards, trading authority statements, checks, deposit slips, banks statements, investment account statements, wire transfer receipts, lists of money collected, and check books.

2.  Currency, stock certificates, securities, and other instruments of monetary value.

3.  Correspondence of any kind.

4.  Business records of any kind.

5.  Documents, including deeds, certificates of title, or other ownership records.

6. Gambling records.

7. Travel records.

8. Investment records.

9. Telephone records.

10. Records relating to payment of personal and business expenses, and records of items purchased with currency.

11. Personal and business financial statements and tax documents.

12. Day planners, calendars, diaries, journals, schedules, or other items recording the activities of the A4L (Associates for Learning) partners, anyone working for A4L, and Steven Hill.

13. Personal and business telephone, address, or electronic mail directories.

14. Any records reflecting a personal or financial relationship between any of the individuals and/or entitles.

15. Records and or notes of a financial transaction.

The crimes being investigated included (1) conspiracy to commit wire fraud by submitting fraudulent invoices to the Detroit Public Schools from A4L and eCare Solutions, Inc. and (2) Hobbs Act, accepting money from A4L under color of official right. Additional crimes alleged in the affidavit include money laundering by Stephen Hill and Marilyn White, and obstruction of justice by Marilyn White and A4L.

The affidavit references a Detroit Public Schools (DPS) sponsored investigation by an outside law firm to investigate $46,000,000 in wire transfer payments by the DPS Risk Management Department (DPS RM) from July 2003-January 2007, and that Stephen Hill, a non-DPS employee, who ran the department, approved a significant number of wire transfers, without additional oversight, that benefitted his friends.

Further information contained in the affidavit, related to allegations of criminal activity

by Stephen Hill, Arthur Gallagher & Co., Long Insurance, and in particular Associates for

Learning, BWW Inc. (Marilyn White, Sherry Washington and Sally J. Bond incorporator May 6,

2002) which, in the articles of incorporation, lists the incorporator's address as 1274 Library,

Suite 601.

The affidavit, in ¶ 12, states that on May 6, 2002, Articles of Incorporation were filed

with the State of Michigan.

> For BWW Group Incorporated (BWW). BWW lists as its
> incorporations:
> Marilyn White, Sherry Washington and Sally J. Bond. The
> address provided for the registered office and for each of the
> incorporations is 1274 Library Street, Suite 601, Detroit,
> Michigan. On August 3, 2006, Restated Articles of Incorporation
> were filed for BWW. Article II . . . states that the purpose or
> purposes for which the corporation is formed are: "To engage in . .
> . providing professional consulting services to public and private
> entities."

The affidavit notes in ¶ 13 that the Articles of Incorporation for Bond White Washington

& Washington (BWWTW), filed with the State of Michigan on March 28, 2006 lists as its

incorporators Marilyn Williams White, Sherry Washington, Gwendolyn Washington and Sally J.

Bond, and provides Suite 600 as the registered office. As of March 28, 2006 BWW&W secured

an assumed name certificate to transact business under the name "Associates for Learning."

Thereafter, the affidavit includes considerable mention of (1) A4L, (2) a personal

relationship between Hill (the DPS money disburser) and Sherry Washington (3) the fact that

Hill had received a significant amount of money from A4L, including a BWW Group check to

him, signed by Sally Jo Bond and deposited to his account (4) the fact that Marilyn White and

her 3 A4L partners were receiving checks (5) the existence of allegedly fraudulent A4L invoices

4

to DPS (6) the fact that different versions of some of the (5) invoices were provided to a Federal Grand Jury.

In addition, the affidavit sets forth, from the DPS outside law firm reports, that according to Lydia Pepper, a DPS RM Program Supervisor at that time, Hill had selected Sherry Washington and A4L because they were friends, but that A4L didn't know anything about the task for which they received a multi million dollar contract.

The affidavit further discussed A4L bank records involving all A4L partners: Gwendolyn Washington, Sherry Washington, Sally Jo Bond and Marilyn White, or entities controlled by them such as SJB Consulting Services, Sherry Washington Gallery, and Dr. Gwendolyn Washington MD, P.C.

The affidavit noted that on each of the three occasions that A4L received a wire transfer of approximately $1M from DPS, three checks of approximately 23% of the total transfer, signed by the fourth A4L partner Marilyn White, were written to Gwendolyn Washington, Sherry Washington, and Sally Jo Bond or entities controlled by them.

The name/entities named on the checks or endorsements, apart from the four A4L partners personally included:

> SBJ, *sic* [SJB] Consulting Services
> Sherry Washington Gallery
> Dr. Gwendolyn Washington MD P.C.
> SAW & Associates
> Sherry Washington & Associates

The affidavit stated at Pp. 14-15 that the A4L checking account appears to be the personal checking account for Marilyn White because it had a debit card used for "numerous transactions which appear to be personal," and then listed 18 such transactions.

5

The affidavit then notes, significantly, that "on July 31, 2007, a Federal Grand Jury Subpoena requesting documents from A4L was served on Marilyn White by the Affiant at the A4L offices located at . . . Suite 601 . . ." (emphasis added). The affidavit also discusses items produced to the federal grand jury from that subpoena to the 601 address. The Court finds this significant with regard to establishing probable cause as to the "601" suite, insofar as a Federal Grand Jury subpoena for A4L records was served on 601, and records relating to A4L were provided in response to that subpoena.

The affidavit further relates that Marilyn White signed the Certificate of Authenticity in returning the records, which response, upon review by the Grand Jury, evidenced significant omissions from A4L bank accounts, and from checks received, such as omitting $2M in checks in payment for consulting services, Affiant ¶ 49.

Thereupon ¶ 55 of the affidavit states that the affiant also served Federal Grand Jury Subpoenas for documents on A4L and BWW & W at Suite 600 where they were accepted by Marilyn White.

Paragraph 56 states that the Government "also seeks to search the office of Gwen Washington MD, P.C. and Sherry Washington Gallery located at . . . Suite 601 . . ."

**THE C 601 SEARCH WARRANT**

The "601" search warrant seeks to search "the office of Gwen Washington MD P.C. and Sherry Washington Gallery." That search warrant is identical to the 600 search warrants, apart from the address change from Suite 600 to Suite 601 as the location to be searched.

**LEGAL DISCUSSION**

As to whether the search warrants were overbroad and lack in particularity, this Court

notes that the Fourth Amendment states, in pertinent part, that "no Warrants shall issue, but upon

probable cause. . . particularly describing the place to be searched, and the person or things to be

seized."

In *United States v. Logan*, 250 F.3d 350 (6th Cir. 2001), a case involving a search for

falsified loan documents at the defendant financial corporation's offices, the search warrant

authorized, *inter alia*, the following items to be seized:

> 1. Information/data stored on computer media
>
> 2. Electronic devices including computers
>
> 3. Instructions or programs in the form of electronic or magnetic media
>
> 4. Printed materials regarding instructions for operation of a computer system
>
> 5. Telephone long distance call records and records of wire and electronic interstate communications
>
> 6. Records and entries regarding HUD, GNMA, FHA
>
> 7. Copies of banking transactions
>
> 8. Documents and ledgers

240 F.3d at 362-363.

The Sixth Circuit upheld the search warrant against a Fourth Amendment challenge:

> A description contained in a warrant is sufficiently particular if it
> is as specific as the circumstances and the nature of the alleged
> crime permit. *Blair*, 214 F.3d at 697. In addition, once a category
> of documents has been adequately described in the warrant, in part
> by an illustrative list of items to be seized, the Fourth Amendment
> is not violated when officers executing the warrant exercise
> minimal judgment as to whether a particular document falls within

the described category. *See id.*

*Id.* at 365.

In *United States v. Blair*, 214 F.3d 690, 697 (6th Cir. 2000), the Sixth Circuit stated:

> [T]he degree of specificity in a warrant must be flexible, depending upon the type of items to be seized and the crime involved. *See United States v. Ables*, 167 F.3d 1021, 1033 (6th Cir. 1998) (*cert. den.* 1999).

It is apparent, based on the facts contained in the affidavit, that Defendant used both addresses, 600 and 601, interchangeably for her business affairs. Accordingly, the Court concludes that as to the challenge relating to the premises searched, there was probable cause to search both addresses pursuant to the two warrants/affidavits.

The next issue is whether the warrant(s) described with particularity the thing to be seized. In examining this issue, the Court concludes that it is appropriate to consider that the search involved business premises in evaluating whether the warrant passes muster as to items to be seized.

The 600 warrant is addressed to an office that contains the following signage: Associates for Learning, BWW Group Inc., and Black Women's Contracting Association. These are all business-type entities. The records to be seized relate to entities and individuals previously described in the affidavit as being intimately involved in the criminal activity described, and are limited to financial documents except for #2 Correspondence of any kind, and #9 Telephone records. But even #2 and #9 are circumscribed by the type of premises to be searched: a business entity. The Court concludes that tying a business entity to the request for correspondence and telephone records supports a conclusion that the search warrant satisfied the requirements of particularity as to the search of Suite 600.

Suite 601 was identified as the offices of the Sherry Washington Gallery [a business] and

Gwen Washington, M.D.  It is clear from the affidavit that Defendant Sherry Washington, who

filed the instant motion to suppress, according to the affidavit:

1.  Was connected to A4L

2.  Was a business person – her Gallery was located there

3.  Was an incorporator of BWW Group Inc., and utilized the 601 address – her gallery business address, as the address for the BWW incorporator in 2002

4.  That in August 2006, BWW filed Restated Articles of Incorporation that included the following corporate activity: "providing professional consulting services to public and private entities."  ¶ 12

5.  She was the recipient of three large checks involving DPS monies that went to A4L and then to Sherry Washington (Aug. 15, 2006, $258,750, ¶ 43), Sherry Washington Gallery (Jan. 10, 2006, $222, 967.25, ¶ 42, and "SAW Consulting Services" (Sept. 5, 2006 $262,500, ¶ 44) (endorsed by "Sherry Washington & Associates)

6.  That BWW wrote a check to co-defendant Stephen Hill (the DPS-hired risk management chief who ordered the funds sent to Defendants)

7.  That the Michigan Articles of Incorporation show the following:

>  Sherry A. Washington and Associates, Incorporated, 1274 Library
>  Street, Suite 601, Detroit, Michigan. ¶ 57

Further tying Suite 601 to the criminal activity set forth in the search warrant are ¶¶ 46

and 49, which state, in pertinent part:

>  46.  On July 31, 2007, a Federal Grand Jury requesting documents
>  from A4L was served on Marilyn White by the Affiant at the A4L
>  office located at 1274 Library Street, <u>Suite 601</u>, Detroit, Michigan
>  . . .
>
>  49.  In reviewing the checks written from the A4L bank account
>  there was significant omissions from this document which A4L
>  provided in response to the Subpoena.  The following A4L checks
>  . . . were omitted from the provided list.

The affidavit listed, *inter alia*, the following checks that had been omitted:

> Check # 1761; Date 8-16-06; Payee Sherry Washington, $258,750;
> for Phase 2; Check # 1763; Date 8-16-06; Payee Gwendolyn
> Washington, $258,750; for Phase 2; Check # 1794, Dated 9-05-06;
> Payee Gwendolyn Washington MDPC, $262,500 for Consulting
> Services; Check # 1795, Date 9-05-06; Payee SAW & Associates,
> $262,500 for Consulting Services.

These paragraphs from the affidavit confirm that there were relevant business records at

the 601 address where the subpoena was served, and that Defendant Sherry Washington was not

honoring the document subpoena.

This information establishes probable cause that Suite 601 was used by Defendant Sherry

Washington for business purposes, that included the instant alleged criminal activity, which then

focuses the search and seizure undertaken pursuant to the warrant, to business-related documents

located at that business location. Accordingly, this necessarily limits the scope of the search of

the two non-specific previously-mentioned items to be seized – #3 Correspondence of any kind,

and #9 Telephone records – to the records that Defendant Sherry Washington possessed at her

business at Suite 601.

**APPLICATION OF *United States v. Leon***

The Court further concludes that even if the search warrant(s) were deficient under the

Fourth Amendment, this case would warrant the application of the "good faith" exception under

*United States v Leon*.

In *Herring v. United States*, 129 S.Ct. 695 (2009) the Supreme Court, interpreting the

"good faith" exception to the exclusionary rule set forth in *United States v. Leon*, 468 U.S. 897

(1984), held that the Fourth Amendment violation in *Herring* – isolated negligence attenuated

from the arrest – did not justify application of the exclusionary rule. In *Herring*, the Supreme

Court declined to suppress evidence seized pursuant to an arrest warrant that violated the Fourth

Amendment because of an isolated breakdown in the computer system database. The Supreme

Court held that the exclusionary rule should not be applied to contraband found during a search

incident to that arrest "when police mistakes are the result of negligence such as that described

here, rather than systemic error or reckless disregard of constitutional requirements . . . ."

*Herring* at 704.  In *Herring*, the officer reasonably believed there was an outstanding arrest

warrant, but that belief was incorrect because of a negligent (not reckless or deliberate)

bookkeeping error by another police employee.  The Supreme Court held:

> To trigger the exclusionary rule, police conduct must be
> sufficiently deliberate that exclusion can meaningfully deter it, and
> sufficiently culpable that such deterrence is worth the price paid by
> the justice system.  As laid out in our cases, the exclusionary rule
> serves to deter deliberate, reckless, or grossly negligent conduct, or
> in some circumstances recurring or systemic negligence.

*Id* at 702. The Court concluded that the error in *Herring* did not rise to that level.

In the instant case, even if the information set forth by the affiant was not sufficient under

the Fourth Amendment, the totality of the effort establishes extensive investigation in a complex

case, and sufficient particularity to support the affiant's belief that Defendant's business entities

contained documents, and given the business nature of the address, supported his belief that the

categories of items sought was not overbroad.  This is not a case to apply the exclusionary rule.

The United States Court of Appeals for the <u>Second Circuit</u> noted, recently:

> The Supreme Court has made clear, since *Leon*, that application of
> the exclusionary rule requires the additional determination that the
> officers' conduct was "sufficiently deliberate that exclusion can
> meaningfully deter it, and sufficiently culpable that such
> deterrence is worth the price paid by the justice system." *Herring*,
> 129 S.Ct. at 702.

*United States v. Rosa*, ___F.3d___ (2d Cir. 2010), 2010 WL 4227428 (Oct. 27, 2010).

The instant case does not merit the application of the exclusionary rule, even assuming a Fourth Amendment violation.

Accordingly, the Court DENIES Defendant Sherry Washington's Motion to Suppress evidence seized pursuant to the search warrants executed at Suites 600 and 601, 1274 Library Street, Detroit, Michigan.

<div style="margin-left:45%">
S/Paul D. Borman_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE
</div>

Dated:  December 1, 2010

<div style="text-align:center">CERTIFICATE OF SERVICE</div>

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on December 1, 2010.

<div style="margin-left:45%">
S/Denise Goodine_____
Case Manager
</div>